IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARGARET KUCHY,

    Plaintiff/Counterclaim Defendant,

    v.

NIDUS DEVELOPMENT, LLC,

    Defendant/Counterclaim Plaintiff/
    Third-Party Plaintiff,

    v.

CORNERSTONE TECHNOLOGY
GROUP, LLC,

    Third-Party Defendant.

CIVIL ACTION FILE
NO. 1:22-CV-1138-TWT

## OPINION AND ORDER

This is a False Claims Act case where the Defendant has filed breach of contract counterclaims. It is before the Court on Counterclaim Defendant Margaret Kuchy and Third-Party Defendant Cornerstone Technology Group, LLC's Motion to Dismiss [Doc. 11] and Kuchy and Cornerstone's Motion to Dismiss First Amended Counterclaims and Third-Party Claims [Doc. 14]. For the reasons set forth below, Kuchy and Cornerstone's Motion to Dismiss [Doc. 11] is DENIED as moot. Kuchy and Cornerstone's Motion to Dismiss First Amended Counterclaims and Third-Party Claims [Doc. 14] is GRANTED in part and DENIED in part.

I. Background

The Court accepts the facts as alleged in the First Amended Counterclaims and Third-Party Claims as true for purposes of the present motion to dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019). This case arises out of alleged schemes to defraud federal healthcare and insurance programs and a whistleblower retaliation claim under the False Claims Act. The present motion involves breach of contract counterclaims and third-party claims of the Defendant Nidus Development, LLC ("Nidus") against the Plaintiff Margaret Kuchy ("Kuchy") and against the Third-Party Defendant Cornerstone Technology Group, LLC ("Cornerstone").[1]

Nidus is a real estate development company specializing in free-standing medical centers. (First Am. Countercls. ¶ 5.) In 2017, Nidus's CEO, Dr. Greg Daniel, created Fairview Urgent Care, LLC ("Fairview") to provide urgent care services in Ellenwood, Georgia. (*Id.* ¶ 4–5.) Dr. Daniel was the sole owner of Fairview, and Nidus provided management services to Fairview. (*Id.*) During a phone call in 2017, Dr. Daniel hired Kuchy as an independent contractor to perform information technology, management, and operations services at Fairview. (*Id.* ¶¶ 6–7.) Kuchy and Dr. Daniel verbally agreed that Kuchy would "spend at least one week per month physically present at Fairview"; assume responsibility "for all operations at Fairview,

---

[1] The Court refers to the Plaintiff Kuchy and the Third-Party Defendant Cornerstone collectively as "Kuchy and Cornerstone."

including the hiring and firing of staff and ensuring that the billing for urgent care services at Fairview was compliant with the law"; and "treat Fairview's business records as confidential," meaning that she could not "take any of Fairview's business records or provide them to third-parties outside of her arrangement with Nidus." (*Id.* ¶ 8.)

While working as an independent contractor at Fairview for Nidus, Kuchy requested that Nidus send the payment for her services to Cornerstone, a business entity for which Kuchy was the registered agent. (First Am. Third-Party Claims ¶¶ 13–14.) Kuchy then endorsed and cashed those checks made out to Cornerstone by signing her own name. (*Id.* ¶ 19.) In May of 2020, Fairview hired Kuchy as a W-2 employee, but Nidus continued to also pay Kuchy as an independent contractor at a reduced rate for her services. (First Am. Countercls. ¶ 11.)

Nidus alleges that Kuchy breached her employment agreement by failing to provide appropriate management services to Fairview, causing the clinic to lose money. (*Id.* ¶ 12.) Specifically, Nidus alleges that Kuchy failed to spend the appropriate number of hours working at Fairview, including failing to spend at least one week physically present at Fairview per month as required by her employment agreement with Nidus. (*Id.*) Nidus also alleges that Kuchy failed to appropriately manage the billing and operations at Fairview and "stole thousands of billing and payroll records" to which she had access by way of her employment. (*Id.*)

On August 2, 2021, an attorney for Kuchy sent Nidus a letter alleging that Fairview was engaging in various fraudulent activities, including wage theft, Medicare/Medicaid fraud, and fraud under the Payroll Protection Act. (*Id.* ¶ 13.) Nidus alleges that Kuchy sent the letter intending to disrupt the impending sale of Fairview and its assets, and that Kuchy's actions caused the sale to be delayed by several months. (*Id.* ¶¶ 14–15.) Kuchy was effectively terminated the same day that her attorney sent the letter to Nidus. (Compl. ¶ 40.) Finally, Nidus alleges that Cornerstone was administratively dissolved in 2011. (First Am. Third-Party Claims ¶ 14.)

On March 21, 2022, Kuchy filed the present lawsuit, alleging that Nidus terminated her in retaliation for reporting various federal False Claims Act violations to Nidus's management. (Compl. ¶¶ 45–50.) On May 18, 2022, Nidus filed its First Amended Counterclaims and Third-Party Claims against Kuchy and Cornerstone, respectively, claiming breach of contract and an award of attorneys' fees. (First Am. Countercls. ¶¶ 18, 23; First Am. Third-Party Claims ¶¶ 26, 31.) On May 30, 2022, Kuchy and Cornerstone filed their amended motion to dismiss Nidus's claims for breach of contract and attorneys' fees. (Kuchy and Cornerstone's Am. Mot. to Dismiss.)

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may

survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.   Discussion

Kuchy and Cornerstone move to dismiss the First Amended Counterclaims against Kuchy and the First Amended Third-Party Claims against Cornerstone on various grounds. The Court first evaluates the sufficiency of the breach of contract claim against Kuchy, then addresses the breach of contract claim against Cornerstone, and finally resolves the arguments regarding Nidus's claims for attorneys' fees.

### A. Breach of Contract Claim Against Kuchy

In support of their motion to dismiss, Kuchy and Cornerstone argues first that Nidus cannot state a claim for breach of contract against Kuchy under an oral, terminable-at-will employment contract and, second, even if they could, such a contract violates the Statute of Frauds. (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 2.)

#### 1. Stating a Claim for Breach of Contract Against Kuchy

Kuchy and Cornerstone cite to several Georgia cases in support of their argument that Nidus cannot state a claim for breach of contract under an oral, terminable-at-will employment agreement. (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 14–15; Reply Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 3–7.) Nidus does not appear to dispute that Kuchy's employment was terminable-at-will. (*See* Def. Nidus's Br. in Opp'n to Kuchy and Cornerstone's Am. Mot. to Dismiss, at 9–11.) In response, however, Nidus argues that Kuchy and Cornerstone rely on case law where courts refused to enforce *future* obligations of employers because the employees were terminable-at-will. (*Id.*) Nidus claims that it seeks to enforce the terms of its oral agreement with Kuchy to recover damages for *past* obligations under Kuchy's employment agreement. (*Id.*)

Under Georgia law, "[a]lthough terminable-at-will employment does not give an employee a contractual right to remain employed, an at-will employment relationship can give rise to certain contractual rights." *Shelnutt*

6

*v. Mayor*, 333 Ga. App. 446, 450 (2015). "In a terminable-at-will employment contract the original terms for compensation are enforceable for that work actually performed under the contract." *E.D. Lacey Mills, Inc. v. Keith*, 183 Ga. App. 357, 361 (1987). Georgia courts have routinely recognized this right for *employees* working pursuant to oral, at-will employment contracts. *See, e.g.*, *id.* at 359 (quoting *Brazzeal v. Com. Cas. Ins. Co.*, 51 Ga. App. 471, 471 (1935)).[2] And Georgia courts have also regularly recognized the propriety of breach of contract claims of *employers* against their former employees. *See, e.g.*, *Wanna v. Navicent Health, Inc.*, 357 Ga. App. 140, 161 (2020) (denying summary

---

[2] The Court recognizes that the Georgia Court of Appeals in *E.D. Lacey* stated that "an employee may sue on an oral contract for employment terminable at will 'for the amount of compensation due him, based upon services actually performed by him up to the time of his discharge, *and not for damages or for compensation for services not performed or for any breach of contract.*'" *E.D. Lacey*, 183 Ga. App. at 359 (emphasis added) (quoting *Brazzeal*, 51 Ga. App. at 471). The Court finds that the language regarding suit "for damages or . . . for any breach of contract" contradicts the primary rule on suing for services actually performed. If an employee sues her employer on an oral, terminable-at-will contract for compensation owed to her based on services she actually performed, then she is, by definition, requesting an award of damages on a breach of contract claim. Such a contradiction favors a finding against preclusion of Nidus's claim against Kuchy. The Court also finds that neither *E.D. Lacey* nor *Brazzeal* specifically precluded a claim for breach of contract by an employee against an employer and therefore considers the language to be dicta. *See United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009). Further, the rule as set forth in *E.D. Lacey*, quoting *Brazzeal*, removes the holding in *Brazzeal* from its context. *Brazzeal* does not stand for the proposition that an employee to an oral contract may not sue under a breach of contract theory; rather, the Georgia Court of Appeals in *Brazzeal* held that the employee did not need to sue on a quantum meruit theory because the employee sued on a contract for services that he actually performed prior to his discharge. *See Brazzeal*, 51 Ga. App. at 471. With these findings, the Court proceeds with the analysis.

judgment on an employer's breach of contract claim against a former employee regarding an alleged violation of a non-compete covenant); *Exceptional Mktg. Grp., Inc. v. Jones*, 749 F. Supp. 2d 1352, 1364–65 (N.D. Ga. 2010) (denying motion to dismiss for failure to state a claim on an employer's breach of contract claim against a former employee regarding an alleged violation of a nonsolicitation agreement). Finally, an agreement need not be reduced to writing to bind the parties. *Venable v. Block*, 138 Ga. App. 215, 217 (1976); *DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1518 (11th Cir. 1989). Under this standard, the Court finds that Nidus may state a claim for breach of contract against Kuchy under the oral, terminable-at-will employment agreement.

Nidus alleges that Kuchy breached her employment agreement with Nidus by "failing to spend at least one week per month physically present at Fairview"; by "failing to properly manage the operations and billing at Fairview"; and by "stealing thousands of billing and payroll records of Fairview that she had access to as a result of her contract with Nidus." (*Id.* ¶ 18.) Nidus further contends that it suffered damages in the form of a delayed sale of Fairview and its assets. (*Id.* ¶ 15.) Taken together, though Nidus's pleading of its damages suffered are scant, the Court finds that Nidus has plausibly stated a claim for breach of contract against Kuchy.

Kuchy and Cornerstone's argument regarding *Rowan v. Dubber, Inc.*, No. 1:19-CV-01276-SDG, 2020 WL 5815923 (N.D. Ga. Aug. 28, 2020), is

8

unavailing. They appear to argue that because "oral promises are not enforceable by at-will employees," Kuchy's employment agreement with Nidus is unenforceable because it was oral and terminable-at-will. *Rowan*, 2020 WL 5815923, at *5 (citation omitted); (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 15.) But the court in *Rowan* declined, at the summary judgment stage, to enforce an oral promise of certain severance benefits where the governing employment contract did not contain such a severance term. *Rowan*, 2020 WL 5815923, at *4–5. Here, at the motion to dismiss stage, the Court is not tasked with weighing evidence of an oral promise incident to an employment contract. Rather, the Court accepts as true the alleged terms of employment as pleaded in the First Amended Counterclaims, and Nidus will have to produce evidence of its allegations pertaining to Kuchy's employment agreement during discovery.

Kuchy and Cornerstone also rely on a similar case where the Georgia Supreme Court affirmed dismissal of a breach of contract claim by a group of employees against their former employer, after the employer orally promised the employees that they would not be fired for cooperating with a Food and Drug Administration inspection. *Balmer v. Elan Corp.*, 278 Ga. 227, 228 (2004). Again, the Court is not currently faced with allegations of an oral promise incident to an at-will employment agreement. For the same reasons as in *Rowan*, *Balmer* does not govern the present motion to dismiss. Accordingly, Nidus may state a claim against Kuchy for breach of contract,

9

provided that the Statute of Frauds does not bar the claim.

### 2. Statute of Frauds

Kuchy and Cornerstone next argue that the employment agreement violates the one-year provision of the Statute of Frauds. (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 12–13.) The Court agrees with Nidus that the mere "*possibility* of performance within one year is sufficient to remove" the employment agreement at issue here from the Statute of Frauds. (Def. Nidus's Br. in Opp'n to Kuchy and Cornerstone's Am. Mot. to Dismiss, at 11 (quoting *Zulke v. AC&DC Power Techs., LLC*, 356 Ga. App. 299, 300–01 (2020)).) Indeed, the Georgia Court of Appeals has affirmed that "the fact that an at-will contract of employment actually lasts several years does not bring the contract within the statute, since either party could put an end to the contract within one year, and the contract would thereby be fully performed." *Zulke*, 356 Ga. App. at 301 (quoting Williston on Contracts § 24:3 (4th ed.)). Thus, because Nidus's employment agreement with Kuchy does not violate the Statute of Frauds, Nidus has adequately pleaded its claim for breach of contract against Kuchy.[3]

---

[3] Having found that the employment agreement does not violate the Statute of Frauds, the Court declines to address the part-performance exception to the Statute. (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 13–14; Def. Nidus's Br. in Opp'n to Kuchy and Cornerstone's Am. Mot. to Dismiss, at 9.)

### B. Breach of Contract Claim Against Cornerstone

Kuchy and Cornerstone argue at length that Nidus cannot recover from Cornerstone because there was no contract between the two. (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 5–9; Reply Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 8–9.) But Nidus makes clear, in response, that Cornerstone has only been added as a third-party defendant to this case "to the extent Kuchy claims she is not liable to Nidus because the agreement at issue was with Cornerstone" (and not with Kuchy individually). (Def. Nidus's Br. in Opp'n to Kuchy and Cornerstone's Am. Mot. to Dismiss, at 3, 5–6.) Nidus claims that its contract was with Kuchy but emphasizes that its theory of recovery for breach of contract against Cornerstone is based upon its allegation that Kuchy and Cornerstone are alter egos.[4] (*Id.* at 5–8.) Finally, Nidus addresses the case law cited by Kuchy and Cornerstone, arguing that they fail to cite authority holding that Nidus's allegations "are insufficient to state a claim for alter ego as a matter of law." (*Id.*)

Kuchy and Cornerstone contend that "where a defendant is not [a] party to a contract, mere conclusory alter-ego allegations cannot give rise to a claim." (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 8–9 (citing *Berg v. Nat'l Asset Mgmt. Agency*, No. 2:11-CV-00236-WCO, 2012 WL

---

[4] Because Nidus bases Cornerstone's liability on an alter ego theory, the Court declines to address the issue of piercing the corporate veil. (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 9–12; Def. Nidus's Br. in Opp'n to Kuchy and Cornerstone's Am. Mot. to Dismiss, at 6.)

11

13018419 (N.D. Ga. July 6, 2012)).) In response, Nidus claims that *Berg* supports its position because the court held that the alter ego doctrine applies where the defendant disregards the separateness of legal entities by commingling funds on an interchangeable basis and where the plaintiff alleges that it has no adequate remedy at law. (Def. Nidus's Br. in Opp'n to Kuchy and Cornerstone's Am. Mot. to Dismiss, at 8 (citing *Berg*, 2012 WL 13018419, at *9–11).) Such a holding, Nidus argues, extends to the present case because Kuchy disregarded the separateness of legal entities (herself and Cornerstone) by commingling funds when she requested that Nidus pay her by sending checks made out to Cornerstone and where she signed and cashed those checks in her own name. *Id.* Nidus also contends that it has adequately pleaded a lack of adequate remedy at law because Cornerstone has been administratively dissolved (and thus if Kuchy claimed she was not liable to Nidus because the employment agreement at issue was with Cornerstone, an equitable remedy would be needed to find Kuchy to be an alter ego of Cornerstone).

The Court acknowledges the important distinction of a legal corporate entity from the entity's shareholders and officers:

> A cardinal precept of corporate law is that corporations are separate legal entities from their shareholders, officers, directors, and employees. This is so even in the situation in which a corporation is owned solely by one person. And, this precept is not altered by the fact that the sole owner uses and controls the corporation to promote the owner's ends. This legal separateness is warranted because a corporation shields individual shareholders and members from personal liability for the acts of the corporation, unless there is legal reason to pierce the

corporate veil. And, *great caution should be taken by courts in disregarding the corporate entity.*

*Dep't of Transportation v. McMeans*, 294 Ga. 436, 437–38 (2014) (emphasis added) (citations omitted).

"Under the alter ego doctrine in Georgia, the corporate entity may be disregarded for liability purposes when it is shown that the corporate form has been abused." *Baillie Lumber Co. v. Thompson*, 279 Ga. 288, 289 (2005). The doctrine applies in two scenarios: first, "where the defendant disregarded the separateness of legal entities by commingling funds on an interchangeable or joint basis or by confusing otherwise separate properties, records, or control," or second, "where a party's disregard of the corporate entity made the corporation a mere instrumentality for the transaction of the party's own affairs." *Berg*, 2012 WL 13018419, at *9 (citing *NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 397 (1996)). The plaintiff must set forth evidence such that "to adhere to the doctrine of corporate entity would promote injustice or protect fraud." *NEC Techs.*, 267 Ga. at 397 (citation omitted).

> Even showing a party owns and controls a corporation for personal ends, however, does not demonstrate an abuse of the corporate entity. To adequately prove alter-ego liability, this simply is not enough. The Plaintiff must allege facts sufficient to show that recognizing [the alleged alter ego] as a separate entity would be allowing an injustice.

*Pak-Tec, Inc. v. Imaje Ink Jet Printing Corp.*, No. 1:03-CV-1249-TWT, 2005 WL 8154327, at *3 (N.D. Ga. Oct. 21, 2005) (citing *United States v. Fid. Cap. Corp.*, 920 F.2d 827, 837 (11th Cir. 1991), and *Baillie Lumber*, 279 Ga. at 289).

13

The Court finds that Nidus has not plausibly stated a claim against Cornerstone under an alter ego theory in the present case. As a preliminary matter, the Court reads nothing in the First Amended Third-Party Claims that suggests "the corporate form has been abused" in this case. *Baillie Lumber*, 279 Ga. at 289. As an independent contractor, Kuchy was entitled to recognize revenue for her work at Fairview through her corporate entity (Cornerstone).

In addition, the Court finds that Nidus has not sufficiently alleged facts establishing that Kuchy disregarded the separateness of legal entities (herself and Cornerstone) by commingling funds. *See NEC Techs.*, 267 Ga. at 397. Specifically, the fact that Kuchy endorsed checks made out to Cornerstone, which were compensation for her work for Nidus, does not alone establish that she commingled funds. As a corporate representative of Cornerstone, Kuchy validly endorsed those checks made out to Cornerstone and presumably deposited those checks into a corporate account on behalf of Cornerstone. Under those circumstances, the Court cannot plausibly conclude that Kuchy commingled funds and therefore cannot conclude that Nidus states a plausible claim for Cornerstone's alter ego liability.

In support of its position that it has sufficiently stated a claim for alter ego liability, Nidus cites to *Ralls Corp. v. Huerfano River Wind, LLC*, 27 F. Supp. 3d 1303, 1329 (N.D. Ga. 2014). (Def. Nidus's Br. in Opp'n to Kuchy and Cornerstone's Am. Mot. to Dismiss, at 8.) The Court finds the present case factually distinguishable from *Ralls Corp.* because in that case, unlike here,

the plaintiff's allegations included a multitude of claims indicating abuse of the corporate form by the defendant and his related corporate entities. *Ralls Corp.*, 27 F. Supp. 3d at 1309–11.

Nidus also argues that "finding that a company is the alter ego of an individual, is justified, where the owner treats the company and [herself] as one unit." (Def. Nidus's Br. in Opp'n to Kuchy and Cornerstone's Am. Mot. to Dismiss, at 7 (quoting *Matter of Hilsman*, 576 B.R. 717, 728 (Bankr. M.D. Ga. 2017)).) The facts as pleaded here do tend to suggest that Kuchy treated Cornerstone and herself as one unit; however, an individual's treatment of her company and herself as one unit is only relevant as evidence to show that "to adhere to the doctrine of corporate entity would promote injustice or protect fraud." *Scott Bros. v. Warren*, 261 Ga. App. 285, 287–88 (2003). Because the allegations here do not show that Kuchy treated herself and Cornerstone as one unit to promote injustice or fraud, such allegations cannot support the plausibility of an alter ego theory.

Finally, the Court's conclusion on this issue is supported by the fact that Kuchy does not contest that she arranged her employment agreement with Nidus in her individual capacity, and not as a representative of Cornerstone. (Reply Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 8.) To the extent Kuchy attempts to avoid any determined liability by arguing Cornerstone was the true party to her employment agreement with Nidus, she will be estopped from doing so. *See Wood v. Sellers*, No. 21-13359, 2022 WL

15

2388428, at *2–3 (11th Cir. July 1, 2022). Accordingly, the Court finds that Nidus has failed to state a plausible claim against Cornerstone on an alter ego theory, and thus, Count I of the First Amended Third-Party Claims against Cornerstone is dismissed.

### C. Attorneys' Fees and Litigation Expenses

Kuchy and Cornerstone contend that Nidus's derivative claims for attorneys' fees and litigation expenses fail as a matter of law. (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 16.) Having found that Nidus has failed to state a breach of contract claim against Cornerstone, the Court agrees that Nidus may not state a derivative claim for attorneys' fees against Cornerstone. (*Id.* at 17 (citing *Popham v. Landmark Am. Ins. Co.*, 340 Ga. App. 603, 612 (2017)).) But the Court disagrees as to Nidus's claim for attorneys' fees against Kuchy.

"Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense under O.C.G.A. § 13-6-11 are generally questions for the jury to decide." *Forsyth Cnty. v. Martin*, 279 Ga. 215, 219 (2005). The Court agrees with Nidus that the question of whether Kuchy is liable for attorneys' fees and litigation expenses is one for a jury to decide. (Def. Nidus's Br. in Opp'n to Kuchy and Cornerstone's Am. Mot. to Dismiss, at 13.)

Kuchy and Cornerstone present various arguments in support of their motion to dismiss Nidus's claims for attorneys' fees against Kuchy, none of which have merit. For example, they contend that Nidus's claim for an award

16

of attorneys' fees is improper because it was pleaded as a separate cause of action. (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 17 (citing *Lamb v. Salvage Disposal Co. of Ga.*, 244 Ga. App. 193, 197 (2000)).) Although O.C.G.A. § 13-6-11 does not create an independent cause of action, Nidus may nonetheless bring its claim for attorneys' fees as a separate count because it brings the claim in connection with a separate substantive claim for relief—a claim for breach of contract. *Tri-State Consumer Ins. Co. v. LexisNexis Risk Sols., Inc.*, 858 F. Supp. 2d 1359, 1371 (N.D. Ga. 2012) ("The fact that [the plaintiff] has pleaded its claim for litigation expenses in a separate count (count five) from its other claims for relief (counts one through four) is irrelevant; what matters is that [the plaintiff] seeks litigation expenses related to a cause of action set forth in its other substantive counts").

Kuchy and Cornerstone also argue that Nidus's claim for attorneys' fees fails because the bad faith alleged by Nidus arises from Kuchy's conduct at the commencement of litigation, as opposed to her conduct underlying the cause of action being litigated. (Br. in Supp. of Kuchy and Cornerstone's Am. Mot. to Dismiss, at 18 (citing *David G. Brown, P.E., Inc. v. Kent*, 274 Ga. 849, 850 (2002)).) The Court disagrees with this characterization. The bad faith that Nidus alleges on Kuchy's part took place during Kuchy's tenure of employment with Nidus. (*See* First Am. Countercls. ¶ 12.) Kuchy sent the letter alleging fraudulent behavior to Nidus's CEO on August 2, 2021, but the present suit did not commence until more than 6 months later on March 22, 2022. (*Id.* ¶ 13;

17

Compl. ¶ 49.) And Kuchy presumably disclosed Fairview's business records to her prior attorney even earlier than she mailed the letter to Nidus's CEO. Thus, the conduct giving rise to Nidus's claim for attorneys' fees against Kuchy arose from her conduct during her employment with Nidus—the underlying cause of action being litigated.

Therefore, the Court finds that Nidus has plausibly stated a claim for attorneys' fees and litigation expenses against Kuchy but not against Cornerstone. Accordingly, Count II of the First Amended Counterclaims against Kuchy proceeds, but Count II of the First Amended Third-Party Claims against Cornerstone is dismissed.

## IV. Conclusion

For the foregoing reasons, Counterclaim Defendant Kuchy and Third-Party Defendant Cornerstone's Motion to Dismiss [Doc. 11] is DENIED as moot, and their Motion to Dismiss First Amended Counterclaims and Third-Party Claims [Doc. 14] is GRANTED in part and DENIED in part. It is GRANTED as to Counts I and II of the First Amended Third-Party Claims against Cornerstone. It is DENIED as to the Counterclaims against the Defendant Kuchy.

SO ORDERED, this ___22nd___ day of September, 2022.

THOMAS W. THRASH, JR.
United States District Judge